IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 2, 2021 Session

**STATE OF TENNESSEE v. RUSSELL WHEELER, JR.**

**Appeal from the Circuit Court for Madison County**
**No. 19-771   Kyle C. Atkins, Judge**

_____

**No. W2020-00030-CCA-R3-CD**

_____

A Madison County jury convicted the defendant, Russell Wheeler, Jr., of attempted aggravated statutory rape, attempted solicitation of a minor, and disorderly conduct. Following a sentencing hearing, the trial court imposed an effective sentence of six years, eleven months, and twenty-nine days in confinement. On appeal, the defendant challenges the sufficiency of the evidence to support his attempted aggravated statutory rape and attempted solicitation of a minor convictions. The defendant also contends the trial court erred in failing to merge his convictions and in ordering a sentence of confinement without requiring a psychosexual evaluation or properly considering the appropriate factors. Following our review, we affirm the judgments of the trial court with respect to the defendant's convictions for attempted aggravated statutory rape and disorderly conduct. However, we vacate the defendant's conviction for attempted solicitation of a minor because the defendant was convicted of a crime which does not exist. Consequently, the judgments of the trial court are affirmed in part, vacated in part, and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part and Vacated in Part and Remanded**

J. Ross Dyer, J., delivered the opinion of the court, in which D. Kelly Thomas, Jr. and Camille R. McMullen, JJ., joined.

Jessica F. Butler, Assistant Public Defender, Tennessee District Public Defenders Conference (on appeal) and George Morton Googe, District Public Defender, and John D. Hamilton, Assistant Public Defender (at trial), for the appellant, Russell Wheeler, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Jody Pickens, District Attorney General; and Benjamin C. Mayo, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## Facts and Procedural History

On August 26, 2019, a Madison County jury indicted the defendant for attempted aggravated statutory rape, solicitation of a minor, and disorderly conduct for his crimes against B.G., the granddaughter of the defendant's girlfriend.[1] The victim, who was born on February 15, 2003, was sixteen years old at the time of trial.

The allegations against the defendant arose in January 2019. At that time, the victim lived in Dyersburg with her mother and siblings. However, the victim often visited her grandmother, Charlotte Marchbanks, at her apartment in Jackson. On January 19, 2019, the victim called Ms. Marchbanks and asked to spend the night. Ms. Marchbanks agreed, and because the roads were icy and Ms. Marchbanks did not feel comfortable driving, the defendant drove her to pick up the victim. The victim's mother, who did not have a good relationship with Ms. Marchbanks and the defendant, agreed to let the victim spend with night with Ms. Marchbanks. However, she told Ms. Marchbanks that the defendant was not allowed to stay the night while the victim was present.

At the time of the incident, Ms. Marchbanks lived in an old motel which had been converted into an apartment building. Her apartment consisted of a single room which served as the kitchen, living room, and bedroom. At approximately 9:00 p.m., Ms. Marchbanks went to bed, while the victim sat on a futon near the end of the bed and played on her phone. The victim, who was wearing headphones, was simultaneously talking to her friend, George[2], and texting her boyfriend, Macario Perez. During their conversation, George mentioned that he and his girlfriend were hanging out, and the victim jokingly told him that they "suck" for hanging out without her. Upon hearing the victim's comment, the defendant approached her, rubbed her head, and handed her a note that said, "You suck?" The victim thought the defendant was making fun of her and asked what the note meant. The defendant looked at the victim and replied, "You know what I mean." When the victim stated that she did not know what the defendant meant, he told her to "[j]ust think about it." The victim handed the note back to the defendant and told George that she would call him back.

Although she had ended her phone call with George, the victim was still texting Mr. Perez through Facebook Messenger and told him what had happened. While she and Mr. Perez were texting, the defendant went into the bathroom and returned wearing only a gray t-shirt. He approached the victim, lifted his shirt, and said, "So what?" The victim looked

[1] It is the policy of this Court to refer to victims of sexual abuse by their initials. For purposes of this opinion, "the victim" will refer to B.G. unless otherwise noted.
[2] George's last name is not provided in the record.

up from her phone and saw that the defendant was nude from the waist down. She quickly looked away and continued texting Mr. Perez. The victim realized that the defendant wanted her to perform oral sex on him and told him, "No." However, the defendant persisted, assuring the victim that "[n]obody will know." While repeatedly asking the victim to perform oral sex, the defendant "touch[ed] himself." The victim glanced at her grandmother, who had remained asleep throughout the exchange, and the defendant insisted "[Ms. Marchbanks] won't know because nobody is going to tell her." Each time the defendant asked the victim to perform oral sex, she told him no, and eventually, the defendant went back into the bathroom and put his pants on. The victim did not try to wake Ms. Marchbanks during the incident because she did not think Ms. Marchbanks would believe her.

After the defendant put his pants back on, he sat next to the victim and tried to talk to her. At this time, Ms. Marchbanks woke up and saw the defendant next to the victim. The defendant quickly stood up and told Ms. Marchbanks that he was instructing the victim to go to bed because it was late. He then got into bed with Ms. Marchbanks and stated, "Look at [the victim]. She's so – she looks so grown up."

Meanwhile, Mr. Perez contacted the victim's mother through Facebook Messenger and sent her screenshots of the victim's texts describing what the defendant had done to her. The victim's mother immediately called the police and reported what had happened.

Officer Jacob Nickell with the Madison County Sheriff's Department responded to a call regarding an individual making sexual comments to a minor. Upon arriving at the scene, Officer Nickell observed the victim standing in the parking lot of the apartment building. The victim was "emotionally distraught" and looked as though she had been crying. The victim told Officer Nickell that the defendant had undressed, fondled himself, and asked her to perform oral sex on him.

After speaking with the victim, Officer Nickell knocked on Ms. Marchbanks' door and asked to speak with the defendant. When Officer Nickell asked the defendant whether he had had an inappropriate conversation with the victim, the defendant denied it and became "very angry, very defensive." Officer Nickell asked the defendant to step out of the apartment, and the defendant began cussing loudly. The defendant ignored Officer Nickell's demands to refrain from cussing, and Officer Nickell placed the defendant under arrest for disorderly conduct. Although Officer Nickell also spoke with Ms. Marchbanks, she told him that she had been asleep and had no knowledge of what had occurred between the defendant and victim. Ms. Marchbanks gave verbal consent for Officer Nickell to search the apartment for the note that the defendant had shown the victim, but Officer Nickell was unable to locate it.

At trial, the defendant called Ms. Marchbanks who testified she had been in a relationship with the defendant for six years. Ms. Marchbanks testified she went to sleep shortly after 9:00 p.m. on the night in question and did not wake up until the police knocked on her door. On cross-examination, Ms. Marchbanks agreed that she did not know what happened while she was asleep.

Following deliberations, the jury found the defendant guilty of attempted aggravated statutory rape, attempted solicitation of a minor, and disorderly conduct. Following a sentencing hearing, the trial court imposed an effective sentence of six years, eleven months, and twenty-nine days. The defendant filed a timely motion for new trial, which the trial court denied. This timely appeal followed.

*Analysis*

On appeal, the defendant argues the evidence presented at trial was insufficient to support his convictions for attempted aggravated statutory rape and attempted solicitation of a minor.[3] The defendant also contends the trial court erred in failing to merge his convictions, failing to contemplate a psychosexual evaluation prior to sentencing, and ordering the defendant to serve his sentence in confinement. The State contends the evidence is sufficient to support the defendant's attempted aggravated statutory rape conviction, the defendant waived review of his attempted solicitation of a minor conviction, and the trial court properly sentenced the defendant. However, the State concedes the defendant's convictions for attempted aggravated statutory rape and attempted solicitation of a minor should merge.

I.     Sufficiency

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of

---

[3] The defendant does not challenge his conviction for disorderly conduct.

- 4 -

the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

## A.    Attempted Aggravated Statutory Rape

The jury convicted the defendant of one count of attempted aggravated statutory rape. The defendant contends insufficient evidence exists to support this conviction by arguing the defendant took no tangible steps towards completing the act. The State suggests the evidence was sufficient, noting the defendant made numerous substantial steps towards the completion of the offense. Upon our review, we agree with the State.

Aggravated statutory rape is "the unlawful penetration of a victim by the defendant, or of the defendant by the victim when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least ten (10) years older than the victim." Tenn. Code Ann. § 39-13-506(c). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required[.]" *Id.* at § 39-13-501(7).

Criminal attempt occurs when a person "acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." *Id.* at § 39-12-101(a)(3). To qualify as a "substantial step," the defendant's "entire course of action" must be "corroborative of the intent to commit the offense." *Id.* at 39-12-101(b).

Viewed in the light most favorable to the State, the proof at trial revealed, while spending the night with Ms. Marchbanks and the defendant, the victim was speaking with her friend on the phone and jokingly told her friend that he "suck[ed]." A few moments later, the defendant rubbed the victim's head and handed her a note that asked, "You suck?" When the victim asked what the note meant, the defendant replied, "You know what I mean." A short time later, the defendant went into the bathroom and returned wearing only a gray t-shirt. The defendant approached the victim, lifted his shirt, and said, "So what?" At this time, the victim understood that the defendant was asking her to perform oral sex on him. The victim told him no several times, but the defendant persisted, assuring her that "[n]obody will know." Additionally, during this time, the defendant was "touching himself." The victim continued to tell the defendant no, and he eventually returned to the bathroom and put his pants on. These events occurred on January 19, 2019, when the victim was fifteen years old. Based on this evidence, a rational jury could find attempted aggravated statutory rape beyond a reasonable doubt.

The defendant argues that his actions did not constitute a "substantial step toward the commission of the offense." Specifically, the defendant contends his "mere requests for oral sex do not meet the substantial step threshold," and it is significant that the defendant terminated the encounter himself. We disagree. The defendant wrote the victim a note which stated, "You suck?" Later, the defendant removed his pants, approached the victim, and repeatedly asked her to perform oral sex while touching himself. Only after the victim refused to comply with his requests did the defendant stop. That the defendant eventually gave up and went to bed does not insulate him from having committed a "substantial step." *See State v. Jason W. Kimberland*, No. 02C01-9711-CC-00447, 1998 WL 382187, at *4 (Tenn. Crim. App. July 10, 1998) ("Even when a person fails to actually complete the felony for voluntary reasons, such conduct does not preclude a *completed* course of action representing an inchoate crime.") (emphasis in original).

Furthermore, although the defendant argues the State "did not submit a single piece of tangible evidence" to corroborate the victim's testimony, her testimony alone is sufficient to support the defendant's convictions. *State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003) (stating a child victim's testimony regarding sexual contact can be sufficient to support a defendant's conviction). Moreover, questions regarding the victim's credibility and the weight and value to be given her testimony are to be determined by the trier of fact and not this Court. *State v. Bland*, 958 S.W.2d 659, 659 (Tenn. 1997). Through its finding of guilt, the jury accredited the testimony of the victim, and we will not disturb that finding on appeal. *Id.* The defendant is not entitled to relief on this issue.

## B.     Attempted Solicitation of a Minor

The jury also convicted the defendant of one count of attempted solicitation of a minor. The defendant contends the crime of attempted solicitation does not exist in Tennessee and his conviction should be reversed. Specifically, the defendant argues that, because the solicitation statute includes attempt language, the trial court erred in charging the jury with attempted solicitation of minor as a lesser-included offense of solicitation of a minor. The State argues the defendant waived consideration of this claim for failing to object to the jury instructions at trial and for failing to include the claim in his motion for new trial. *See* Tenn. R. App. P. 3(e). However, because a decision in the defendant's favor would lead to the dismissal of the charge rather than a new trial, we may review the claim on the merits, despite the defendant's failure to include it in his motion for new trial. *See State v. Palmer*, 10 S.W.3d 638, 643-44 (Tenn. Crim. App. Jan. 3, 2000) (electing to review the defendant's claim that attempted second degree murder was not an offense on the merits despite the defendant's failure to include the claim in his motion for new trial), *no perm. app. filed*.

Tennessee Code Annotated section 39-13-528 provides, in relevant part, as follows:

(a) It is an offense for a person eighteen (18) years of age or older, by means of oral, written or electronic communication, electronic mail or internet services, directly or through another, to intentionally command, request, hire, persuade, invite or **attempt to induce** a person whom the person making the solicitation knows, or should know, is less than eighteen (18) years of age, or solicits a law enforcement officer posing as a minor, and whom the person making the solicitation reasonably believes to be less than eighteen (18) years of age, to engage in conduct that, if completed, would constitute a violation by the soliciting adult of one (1) or more of the following offenses:

(7) Statutory rape, pursuant to § 39-13-506.

Tenn. Code Ann. § 39-13-528(a)(7) (emphasis added). Meanwhile, as noted in the previous section, criminal attempt occurs when a person "acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." *Id.* at § 39-12-101(a)(3).

It is clear in reading the solicitation statute that solicitation is an offense which itself prohibits an attempt. Rather than attempted solicitation constituting a separate and distinct offense, it is instead incorporated into the solicitation statute itself. To permit "attempted

solicitation of a minor" would make it a crime to attempt to attempt to induce a minor. Such a result is both illogical and legally impossible. We therefore find that there can by no such offense as "attempted solicitation of a minor" under existing Tennessee law.[4] Because we find that the crime of "attempted solicitation of a minor" does not exist, the defendant's conviction for attempted solicitation of a minor is vacated and dismissed.

## II. Sentencing

The defendant argues the trial court erred in failing to consider all appropriate factors, including a psychosexual evaluation, prior to sentencing the defendant to confinement.[5] The State contends that the defendant waived his claim regarding the psychosexual evaluation for failing to object at the sentencing hearing and that trial court properly imposed a sentence of confinement.

## A. Psychosexual Evaluation

We must first address the State's contention that the defendant waived our review of the psychosexual evaluation. Tennessee Code Annotated section 39-13-705 states, in relevant part, as follows:

> (a) On and after January 1, 1996, each sex offender who is to be considered for probation or any other alternative sentencing shall be required to submit to an evaluation for treatment, risk potential, procedures required for monitoring of behavior to protect victims and potential victims, and an identification under the procedures developed pursuant to § 39-13-704(d)(1).

> (b) Those offenders found guilty at trial . . . that are to have a presentence report prepared for submission to the court shall be required to submit to the evaluation referred to in subsection (a). The evaluation shall be included as part of the presentence report and shall be considered by the court in determining the sentencing issues stated in this section. If the court grants probation or alternative sentencing, any plan of treatment recommended by the evaluation shall be a condition of the probation or alternative sentencing . . .

---

[4] This conclusion is consistent with other jurisdictions that have addressed the issue and held "[w]hen a statutory offense is itself an attempt to complete an act, there is no separate crime consisting of an attempt to commit the offense." *Brown v. State*, 550 So.2d 142, 143 (Fla. Dis. Ct. App. Oct. 13, 1989).

[5] The defendant also argues the trial court erred in failing to merge his convictions for attempted aggravated statutory rape and attempted solicitation of a minor. However, because we have vacated his attempted solicitation of a minor conviction, we need not address that issue.

(c)     The evaluation and identification required by subsection (a) shall be at the expense of the offender evaluated, based upon the offender's ability to pay. The plan of treatment and behavior management shall be at the expense of the offender based upon the offender's ability to pay.

The defendant is correct in that the evaluation is not a part of the record, and the trial court made no reference to it in sentencing the defendant. However, no objection or reference was made by the defendant at the sentencing hearing; thus, the issue is waived. Tenn. R. App. P. 36(a); *see also State v. Darrel Dean Hochhalter*, No. M2014-01106-CCA-R3-CD, 2015 WL 4556917, at *17 (Tenn. Crim. App. July 29, 2015), *perm. app denied* (Tenn. Oct. 15, 2015); *State v. Tracy Tulloch*, No. E2000-03046-CCA-R3-CD, 2001 WL 1523356, at *2 (Tenn. Crim. App. Nov. 30, 2001), *no perm. app. filed*. Moreover, we subsequently conclude in this opinion that the trial court did not err in denying probation. Therefore, the defendant is not entitled to relief on this issue.

## B.     Denial of Probation

A trial court's decision to grant or deny probation is reviewed under an abuse of discretion standard with a presumption of reasonableness when the sentence reflects the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* Tenn. Code Ann. § 40-35-303(b); *State v. Russell*, 773 S.W.2d 913, 915 (Tenn. 1989); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

Generally, probation is available to a defendant sentenced to ten years or less. Tenn. Code Ann. § 40-35-303(a). A defendant who is convicted as an especially mitigated or standard offender of a Class C, D, or E felony is considered a favorable candidate for probation. Tenn. Code Ann. § 40-35-102(6)(A). In determining whether incarceration is appropriate, the trial court should consider whether:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C).

In denying probation, the trial court articulated its reasons, as follows:

With regard to probation, I've looked at the factors considering probation. I looked at the [p]resentence [r]eport. It weighs against probation. His physical and mental, social history weigh against probation. The facts and circumstances surrounding this offense, and the nature and circumstances of the criminal conduct involved weigh against probation.

The prior criminal history of this defendant weighs against probation, even though it was some time ago. Some of it has been very resent (sic). In fact, at the time he committed it he was on probation.

Previous actions and character of the defendant work against probation; whether or not the defendant might reasonably be expected to be rehabilitated. And frankly what I looked at was his lack of potential for rehabilitation. He's got 10 or 11 felonies and 22 misdemeanors. I just don't think he's going to get there.

Whether or not it appears that he'll abide by the terms of probation. He was on probation at the time this happened. I do think it's in the interest of society to protect society from future criminal conduct from this particular defendant.

He's had plenty of opportunities of measures less restrictive than confinement. I think that weighs against probation.

So having said that, I do not think probation is appropriate in this matter.

In determining whether to allow the defendant to serve his sentence on probation, the trial court properly considered the statutory criteria as well as other facts and circumstances supported by the record. Specifically, the trial court noted the defendant

had ten or eleven prior felonies and twenty-two prior misdemeanors and was on probation at the time he committed the offenses against the victim. Additionally, the trial court's determination is consistent with the purposes and principles of sentencing. Thus, the trial court did not abuse its discretion in denying the defendant's request for probation and imposing a sentence of confinement.

### *Conclusion*

Based on the foregoing authorities and reasoning, the judgments of the trial court are affirmed with respect to the defendant's convictions for attempted aggravated statutory rape and disorderly conduct. The defendant's conviction for attempted solicitation of a minor is vacated and dismissed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

_____
J. ROSS DYER, JUDGE